1815.
DECEMBER.

Smith
vs
Robertson.

In trover for a bond, stated in the declaration to have been executed by H C and A G to the plaintiff—*Held, that it was competent for the plaintiff to prove, by one of the obligors in the bond, its execution, without producing the bond, if it was in the defendants' possession; and that it was not necessary to give any other notice for the production of the bond, than what was given by the declaration in the action;*

SMITH vs. ROBERTSON's Ex'r.

APPEAL from *Prince-George's* County Court. This was an action of trover for sundry bonds executed by *Henry T. Compton* and *Alexander Gibbons,* to the plaintiff's testator, each in the penal sum of $200. The defendant pleaded not guilty, and the act of limitations. And at the trial the plaintiff offered to prove, by *Alexander Gibbons,* the person named in the declaration, the execution and contents of the bonds stated in the declaration, without producing the bonds, or proving that notice had been given to the defendant to produce them. To this testimony the defendant objected. But the Court, [*Johnson,* Ch. J.] admitted the evidence, being of opinion that it was competent for the plaintiff to prove, by the obligor of the bonds, their execution, without producing the bonds, if the same were in the defendant's possession; and that it was not necessary to give any other notice for the production of the bonds, than what was given by the declaration in the cause.

The defendant excepted; and the verdict and judgment being against him, he appealed to this court, where the cause was argued before CHASE, Ch. J. and BUCHANAN, NICHOLSON, and MARTIN, J,

*Magruder,* for the Appellant. A deed must be produced, if it is in the power of the party. If he asks that this rule be dispensed with, he must show some circumstances which will authorise the court to dispense with it. If the bond is lost or destroyed, proof of this fact must first be offered. If it is in the possession of the adverse party, notice must be given to him to produce it. 1 *Peake's Evid.* 63. *Waring v Warren,* 1 *Johns. Rep.* 340. If trover is brought for a note or bill of exchange, notice must be given to produce the original, before evidence of its contents is admissible. 1 *Peake's Evid.* 110. In cases where any written paper is the subject of the action of trover, the plaintiff should prove notice to the defendant to produce it. *Ibid* 321. The court below seems to have thought the declaration was sufficient notice. If this is the case, notice would never be necessary in an action of trover. The declaration must describe the bonds or notes said to have been converted, and it is evidence of the nature of the plaintiff's claim, but it cannot be evidence that he wishes the bonds to be produced. Unless the plaintiff

gives notice to the defendant that he requires the production of the bonds, the defendant is not bound to know he will want them, or to be ready to produce them. The plaintiff is himself to take care that he has done every thing which is necessary in order to make out his case.

*Van Horn*, for the Appellee. Where the declaration specifies the writing for which the plaintiff goes, (as in this case,) the declaration is sufficient notice. 2 *Esp. Dig.* 515. *The Commonwealth v Messinger*, 1 *Binny's Rep.* 273. JUDGMENT AFFIRMED.

<div style="text-align:right">1815.<br>Baltimore Insur-<br>ance Company<br>vs<br>M'Fadon.</div>

THE BALTIMORE INSURANCE COMPANY vs. M'FADON. DECEMBER.

APPEAL from *Baltimore* County Court. This was an action of covenant on a policy of insurance dated the 11th of March 1799, brought in the name of *John M'Fadon*, as surviving partner of *R. Lawson*, for the use of *Dorsey* and *Hollins*. The defendants, (now appellants,) pleaded *non infregit conventionem*, and bankruptcy of the plaintiff. Issue was joined to the first plea, and a replication to the second plea, that the policy was assigned, &c. Rejoinder, that there was no assignment. There was an agreement that all errors in the pleadings should be released.

1. The plaintiff, (now appellee,) at the trial, read in evidence the policy of insurance in the declaration mentioned, under the common seal of the defendants; and also gave in evidence, that on or about the 1st of March 1799, the brig *Betsey*, in the policy mentioned, sailed from *Baltimore* to *Barracoa*, in the Island of *Cuba*, on the voyage

<div style="font-size:small">
A policy of insurance dated in 1799, was effected on the cargo of a vessel bound from B, in the U S. to A, in the Island of Cuba, which vessel was captured, and the cargo lost, and the insured, it was proved that the vessel cleared out from B to C, on the continent of South America, and proceeded on her voyage to C and not to A, and when captured had a regular clearance for C, together with a bill of lading, invoice and manifest of the cargo, and affidavit to prove the property thereof annexed to the invoice, with a letter of instruction from the insured to the captain of the vessel, relative to the manifest of the cargo, passport, voyage and sea letter; in all of which the voyage was described as a voyage from B to C. The evidence of the captain
</div>

was, that he sailed from B to A, and with positive instructions from his owners to proceed to A, and he was going direct thereto when he was captured. Evidence was also offered by the assured, that at the time of making the policy, the fact that the vessel had cleared out for C, and had on board the said documents, was known to the assurers—*Held*, that if the vessel did in fact proceed on a voyage from B to A, at the time mentioned, and if the fact, that she had cleared out for C, and had on board the said documents, describing her voyage as a voyage to C, was known to the assurers at the time of making the policy, then the clearance, and the documents, could not in law affect the assured's right to recover.

If the intent and object of the voyage, and the instructions to the master of the vessel, were to proceed with the cargo to A, and there leave the vessel to go to J, a port within the territory of the *French* republic, and under the known and acknowledged authority of *France*, and at J to sell, barter or exchange, or otherwise dispose of, the cargo, or a part thereof, to or with some person at J, or with the proceeds of the cargo to purchase there the whole or a part of a return cargo for the owners, with intent to convey and ship the same on board the said vessel as a return cargo, or part of a return cargo, that then the assured cannot recover. Per *Nicholson*, Ch. J. in the county court

A promissory note drawn by P, in favour of D, may be set off in an action on an open policy of insurance brought by P against D

Where a vessel and cargo, after being captured, were libelled as prize and for salvage in the court of vice admiralty, and part of the cargo was sold by virtue of an interlocutory decree of that court, for less than the value, according to the invoice and actual price, and the proceeds of sale paid to the assured; and the vessel and cargo were acquitted and ordered to be restored by a final decree, and the vessel and residue of the cargo given up to the assured, who sold the residue of the cargo for less than the value, according to the invoice, and received the same—*Held*, that the assured was entitled to recover, as for a partial loss, for the difference between the sum produced by the sale of that part of the cargo which was sold by the order of the court of vice admiralty, and the actual value thereof at the port of B, where the insurance was effected, but that the assured was not entitled to recover for the difference between the sum produced by the sale of that part of the cargo which was sold by the assured himself, and the actual value thereof at the port of B